UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CATHERINE L. HARRIS, | ) | 1:07-cv-001037-SMS |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER DENYING |
| v. | ) | PLAINTIFF'S SOCIAL SECURITY |
| | ) | COMPLAINT (DOC. 1) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | ORDER DIRECTING THE ENTRY OF |
| Security, | ) | JUDGMENT FOR DEFENDANT MICHAEL J. |
| | ) | ASTRUE, COMMISSIONER OF SOCIAL |
| Defendant. | ) | SECURITY, AND AGAINST PLAINTIFF |
| | ) | CATHERINE L. HARRIS |
| | ) | |

Plaintiff is proceeding in forma pauperis and with counsel with an action seeking judicial review of an unfavorable decision of the Commissioner of Social Security (Commissioner) with respect to Social Security benefits. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this matter, including ordering the entry of final judgment.[1]

I. Procedural History

A prior application for Supplemental Security Income payments (SSI) was determined adversely to Plaintiff by the

---

[1] The Honorable Lawrence J. O'Neill ordered the action reassigned for all purposes to the undersigned Magistrate Judge on August 10, 2007.

1

decision of Administrative Law Judge James P. Berry on March 28, 2002, that Plaintiff was not disabled through the date of the decision. (A.R. 14, 32-36.)

Plaintiff then on April 9, 2002, filed the application for SSI that is the subject of review in the present proceeding, alleging disability commencing on September 1, 1999, due to mental problems that left her unable to cope or function, including irritability, depression, and moodiness, and discogenic and degenerative disorders of the back. (Tr. 70-78, 15.)

After Plaintiff's claim was denied initially and on reconsideration, Plaintiff requested, and appeared at, a hearing before the Honorable Bert C. Hoffman, Administrative Law Judge (ALJ) of the Social Security Administration (SSA), on April 6, 2004. (A.R. 40-51, 14.) Plaintiff appeared with an attorney and testified. (Tr. 14, 216-241.) On June 3, 2004, the ALJ denied Plaintiff's application for benefits. (Id. at 14-21.) Plaintiff appealed the ALJ's decision to the Appeals Council. After the Appeals Council denied Plaintiff's request for review on May 25, 2007, (Tr. 5-8), Plaintiff filed the complaint in this action on July 17, 2007. Briefing commenced on February 19, 2008, and was completed with the filing on March 20, 2008, of Plaintiff's reply brief.

II. Standard and Scope of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g).

1  Substantial evidence means "more than a mere scintilla,"

2  Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a

3  preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10

4  (9th Cir. 1975). It is "such relevant evidence as a reasonable

5  mind might accept as adequate to support a conclusion."

6  Richardson, 402 U.S. at 401. The Court must consider the record

7  as a whole, weighing both the evidence that supports and the

8  evidence that detracts from the Commissioner's conclusion; it may

9  not simply isolate a portion of evidence that supports the

10 decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.

11 2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

12 It is immaterial that the evidence would support a finding

13 contrary to that reached by the Commissioner; the determination

14 of the Commissioner as to a factual matter will stand if

15 supported by substantial evidence because it is the

16 Commissioner's job, and not the Court's, to resolve conflicts in

17 the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th

18 Cir. 1975).

19      In weighing the evidence and making findings, the

20 Commissioner must apply the proper legal standards. Burkhart v.

21 Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

22 review the whole record and uphold the Commissioner's

23 determination that the claimant is not disabled if the

24 Commissioner applied the proper legal standards, and if the

25 Commissioner's findings are supported by substantial evidence.

26 See, Sanchez v. Secretary of Health and Human Services, 812 F.2d

27 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If

28 the Court concludes that the ALJ did not use the proper legal

3

1  standard, the matter will be remanded to permit application of

2  the appropriate standard. <u>Cooper v. Bowen</u>, 885 F.2d 557, 561 (9th

3  Cir. 1987).

4      III. <u>Disability</u>

5      In order to qualify for benefits, a claimant must establish

6  that she is unable to engage in substantial gainful activity due

7  to a medically determinable physical or mental impairment which

8  has lasted or can be expected to last for a continuous period of

9  not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A

10 claimant must demonstrate a physical or mental impairment of such

11 severity that the claimant is not only unable to do the

12 claimant's previous work, but cannot, considering age, education,

13 and work experience, engage in any other kind of substantial

14 gainful work which exists in the national economy. 42 U.S.C.

15 1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th

16 Cir. 1989). The burden of establishing a disability is initially

17 on the claimant, who must prove that the claimant is unable to

18 return to his or her former type of work; the burden then shifts

19 to the Commissioner to identify other jobs that the claimant is

20 capable of performing considering the claimant's residual

21 functional capacity, as well as her age, education and last

22 fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d

23 1273, 1275 (9th Cir. 1990).

24     The regulations provide that the ALJ must make specific

25 sequential determinations in the process of evaluating a

26 disability: 1) whether the applicant engaged in substantial

27 gainful activity since the alleged date of the onset of the

28 impairment, 2) whether solely on the basis of the medical

4

evidence the claimed impairment is severe, that is, of a
magnitude sufficient to limit significantly the individual's
physical or mental ability to do basic work activities; 3)
whether solely on the basis of medical evidence the impairment
equals or exceeds in severity certain impairments described in
Appendix I of the regulations; 4) whether the applicant has
sufficient residual functional capacity, defined as what an
individual can still do despite limitations, to perform the
applicant's past work; and 5) whether on the basis of the
applicant's age, education, work experience, and residual
functional capacity, the applicant can perform any other gainful
and substantial work within the economy. See 20 C.F.R. § 416.920.[2]

Here, the ALJ found that Plaintiff had mild thoracolumbar
scoliosis, a severe impairment; her mental impairment was not
medically determinable and was not severe. (A.R. 16.) She had the
residual functional capacity (RFC) to lift and carry fifty pounds
occasionally and twenty-five pounds frequently; stand, walk, and
sit six hours in an eight-hour workday; and perform simple,
repetitive tasks. (A.R. 19.) Plaintiff had no past relevant work.
Because there had been no change in Plaintiff's RFC since Judge
Berry's decision of March 28, 2002, then pursuant to principles
of res judicata, the findings of Judge Berry controlled, and thus
Plaintiff could not perform heavy exertional work activity but
could perform a full range of medium work, including simple,
repetitive tasks involved in unskilled work, and could adjust to
other work, including 2,269,020 unskilled jobs in California and

[2] Unless otherwise stated, all references are to the 2004 version of the Code of Federal Regulations.

5

1  22,690,200 unskilled jobs in the national economy. (A.R. 19.)

2      III. <u>Failure to find Severe Mental Impairment</u>

3        A. <u>Background</u>

4      The previous ALJ had found that Plaintiff had severe

5  impairments of a depressive disorder and borderline personality

6  disorder. (A.R. 36.)

7      The ALJ in the case under review detailed the new evidence

8  that had been submitted since the previous decision, and he then

9  concluded as to "Part B" of the mental listings that Plaintiff

10 had mild restriction of activities of daily living, maintaining

11 social functioning, and maintaining concentration, persistence,

12 or pace. He concluded that Plaintiff's mental impairment was not

13 medically determinable and was not severe. (A.R. 16.) He stated:

14     The medical opinion expressed in Exhibit B-4F [Charles
House, Ph.D., opinion at R.T. 142-49] is not generally
15 credible and is to be given little weight because
the claimant's relevant medical records show minimal,
16 if any: objective signs or symptoms observed;
administration of a diagnostic examination or
17 description of results; diagnosis of nature and
extent of disease (and pain)[;] regular treatment;
18 consultation with an appropriate specialist;
evaluation of compliance, results of treatment and
19 determination of additional treatment needs.

20 (A.R. 18.) He further stated:

21     Consultative psychologist [Lance A. Portnoff, Ph.D.,
R.T. 195-99] reported on the many inconsistencies in
22 the claimant's testing results in Exhibit B-10F.
He noted that the claimant was able to independently
23 manage her checking account and denied any problems
with activities of daily living. He noted that she
24 did not appear to be making her best effort on testing
and he considered the findings to not be a valid
25 representation of her actual cognitive status.

26 (A.R. 19.)     B. <u>Legal Effect of Previous Finding</u>

27     Plaintiff argues that the previous ALJ's finding that

Plaintiff had a severe mental impairment was binding as a matter

of law.

    The pertinent legal standards are established:

        This court has stated that an ALJ's finding that a
    claimant is not disabled "create[s] a presumption that
    [the claimant] continued to be able to work after that
    date." Miller v. Heckler, 770 F.2d 845, 848 (9th
    Cir.1985). The presumption does not apply, however, if
    there are "changed circumstances." Taylor v. Heckler,
    765 F.2d 872, 875 (9th Cir.1985). An increase in the
    severity of the claimant's impairment would preclude
    the application of res judicata. Id. The claimant need
    not, however, demonstrate that his medical or
    psychiatric condition has worsened to show changed
    circumstances. Other changes suffice. For example, a
    change in the claimant's age category, as defined in
    the Medical-Vocational Guidelines, constitutes a
    changed circumstance that precludes the application of
    res judicata. Chavez v. Bowen, 844 F.2d 691, 693 (9th
    Cir.1988). In addition, the Commissioner may not apply
    res judicata where the claimant raises a new issue,
    such as the existence of an impairment not considered
    in the previous application. Gregory v. Bowen, 844 F.2d
    at 666. Nor is res judicata to be applied where the
    claimant was unrepresented by counsel at the time of
    the prior claim. Id.

Lester v. Chater, 81 F.3d 821, 827-28 (9th Cir. 1995) (footnote

omitted). The presumption of continuing nondisability applies

when adjudicating a subsequent disability claim with an

unadjudicated period arising under the same title of the Act as

the prior claim. Chavez v. Bowen, 844 F.2d 691, 693-94 (9th Cir.

1988). Determinations such as conclusions regarding RFC,

education, and skills are binding. Id. at 694.

    In the decision under review in this proceeding, the ALJ

adverted to the prior decision and noted that principles of res

judicata created a presumption of continuing non-disability

following the period previously adjudicated. (A.R. 14-15.) The

ALJ stated that the applicant could rebut the presumption by

proving changed circumstances indicating a greater disability,

7

and the ALJ further noted that he was required to adopt the findings from the prior decision unless there was new and material evidence relating to such findings. (Id. at 15.) He further expressly stated that there had been no material change in the claimant's residual functional capacity since the previous decision, in which Judge Berry had found that Plaintiff could not perform heavy exertional work but could perform simple, repetitive tasks and unskilled work, which was available in abundance in California and in the national economy. (A.R. 19.) The ALJ expressly stated, "Judge Berry's finding controls, as a matter of law." (A.R. 19.)

Here, the ALJ evaluated the additional evidence concerning Plaintiff's mental impairment submitted after the previous ALJ's decision, including progress notes of treatment and the opinions of Drs. House and Portnoff. (A.R. 17-18.) The ALJ expressly concluded that there had been no material change in Plaintiff's RFC of a limitation to simple, repetitive tasks. (A.R. 19.) Thus, pursuant to Chavez, Plaintiff could perform simple, repetitive tasks, and unskilled work. (A.R. 19.)

The ALJ properly noted the previous findings, considered the new evidence, evaluated it, and determined that no material change in Plaintiff's RFC had been established. The ALJ's overall application of the principles of res judicata was correct.

### C. Failure to Find Severe Mental Impairment

The ALJ apparently credited the opinion of consulting examiner Dr. Portnoff in finding that Plaintiff's mental impairment was not medically determinable and not severe. (A.R. 16.) The ALJ noted Dr. Portnoff's conclusions that Plaintiff was

not making her best effort, the findings did not validly
represent Plaintiff's actual cognitive status, and her
performance was improbable. (A.R. 18, 19.) The ALJ noted that
Plaintiff denied any problems with activities of daily living
with Dr. Portnoff and was able to manage her checking account.
(A.R. 19.)

At step two, the Secretary considers if claimant has "an
impairment or combination of impairments which significantly
limits his physical or mental ability to do basic work
activities." 20 C.F.R. § 416.920(c). This is referred to as the
"severity" requirement and does not involve consideration of the
claimant's age, education, or work experience. Id. The step-two
inquiry is a de minimis screening device to dispose of groundless
claims. Bowen v. Yuckert, 482 U.S. 153-54 (1987). The
Commissioner is required to "consider the combined effect of all
of the individual's impairments without regard to whether any
such impairment, if considered separately, would be of
[sufficient medical] severity." 42 U.S.C. § 1382c(a)(3)(F).

Basic work activities include the abilities and aptitudes
necessary to do most jobs, such as physical functions of walking,
standing, sitting, lifting, pushing, pulling, reaching, carrying,
or handling; capacities for seeing, hearing, and speaking;
understanding, carrying out, and remembering simple instructions;
use of judgment; responding appropriately to supervision, co-
workers and usual work situations; and dealing with changes in a
routine work setting. 20 C.F.R. § 416.921(b).

An impairment or combination thereof is not severe when
medical evidence establishes only a slight abnormality or a

9

combination of slight abnormalities which would have no more than
a minimal effect on an individual's ability to work. An
impairment is not severe if it does not significantly limit a
claimant's physical or mental ability to do basic work
activities. 20 C.F.R. § 416.921(a); Soc. Sec. Ruling 85-28;
Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996).

Dr. Portnoff's opinion, which is discussed in detail below,
supports the ALJ's finding that Plaintiff did not suffer any
medically determinable, severe impairment.

Further, it is established that an ALJ's failure to find an
impairment severe, even if erroneous, is harmless error where at
the later RFC stage of the analysis, the ALJ discusses the
impairment, the medical findings, the pertinent symptoms, and the
applicable opinions concerning functional limitations. Lewis v.
Astrue, 498 F.3d 909, 911 (9th Cir. 2007). Here, the ALJ
nevertheless included in the RFC a limitation to simple,
repetitive tasks. Therefore, even if the previous ALJ's finding
regarding severity of the mental impairment were recognized as
binding, the RFC under review nevertheless reflects the limits
that the previous ALJ had determined were applicable because of a
severe mental impairment.

D. Reasons for Rejecting Dr. House's Opinion

Plaintiff argues that the present ALJ failed to state
specific and legitimate reasons for rejecting Dr. House's
opinion.

The ALJ considered whether a disability existed after April
9, 2002, the date of the most recent SSI application. The ALJ

1 summarized the medical history of Plaintiff's mental impairments.[3]
2 (A.R. 16-18.)

3       In April and May 2001, Plaintiff visited the County Mental
4 Health and Human Services Agency, stating that she had received
5 mental health services for over two years, had relocated to the
6 area from another state, and was commencing a continuation of
7 counseling. (A.R. 122.) Plaintiff, who was twenty-eight years old
8 then, reported that she was anxious and depressed, had been
9 abused as a child, had cut herself, and at age nineteen she
10 assaulted her grandfather. (A.R. 122-25.) She reported using
11 methamphetamine daily until 1999; she overdosed at age twenty-six
12 or twenty-seven. (A.R. 122.) In May 2001, L.C.S.W. Temple opined
13 that Plaintiff was abusing substances that could be producing her
14 symptoms of depression and anxiety. (A.R. 121.) Plaintiff did not
15 follow through with the initial screening and assessment because
16 she failed to keep her appointment, and she was discharged from
17 care on June 15, 2001. (A.R. 16, 117-25.)

18      From May through September 2001, she visited the Family
19 Healthcare Network for refills of medications, including Zoloft
20 and Buspar, for depression and anxiety. (A.R. 126-38.) In May,
21 the impression was a history of questionable anxiety and
22 socialphobia. The progress notes do not indicate that any mental
23 status exam or other mental diagnostic testing or process was
24 undertaken. (Id.) Plaintiff failed to appear for appointments in
25 August 2001 and February 2002. (A.R. 131, 190.)

26      In July 2002, Charles House, Ph.D., performed a consultative
27
28      [3] Only Plaintiff's mental impairments are detailed in this decision because the issues Plaintiff raises relate only to mental impairments.

1  and comprehensive psychiatric evaluation after reviewing records
2  provided by the Social Services Administration Adult Disability.
3  (A.R. 142-49.) Plaintiff reported having experienced mood swings
4  throughout her life and problems with focusing that began after
5  she was kicked in the head by a horse at the age of six and was
6  unconscious for over an hour. She was in special education
7  classes as a student and went through the ninth grade. She used
8  drugs to self-medicate after being abused by a relative during
9  her minority. Plaintiff reported that a mental health clinic in
10 Tulare told her she had no problems and should give up caffeine.
11 She still drank alcohol in moderation but had not used street
12 drugs for five years. Plaintiff could not afford medicine. (A.R.
13 143.) She denied any hospitalization for a psychiatric disorder.

14     Plaintiff reported that she lived with a parent, had
15 difficulty keeping a job because of memory and attention
16 problems, and was unrestricted in terms of activities of daily
17 living. She spent time with friends who visited, but she asserted
18 that she had problems dealing with people.

19     A mental status exam revealed that Plaintiff was oriented as
20 to person, place and time, and was alert and responsive; her
21 attitude was cooperative and behavior unremarkable. Her speech,
22 responses to questions, and stream of mental activity were
23 delayed, but her speech was productive, stream of mental activity
24 was not convoluted or disjointed, and thinking was concrete but
25 logical. Her vocabulary was below average. Her mood was
26 depressed, and her affect was flattened.

27     On a mini-mental status exam in which Plaintiff was asked to
28 repeat objects and phrases or state spontaneous thoughts,

12

1  Plaintiff could repeat only two of three objects and had other
2  problems with recall and orientation that revealed marked
3  cognitive impairment with deficits in concentration, attention,
4  and memory. (A.R. 145-46.) Dr. House opined that the impairment
5  appeared to be directly related to central nervous system damage
6  which might have been sustained during the incident with the
7  horse. She could not count backwards from twenty to one and was
8  unable to do so without significant error; she was administered a
9  Six Cognitive Impairment Test and scored 14, which again
10 indicated marked cognitive impairment. (A.R. 146.) Plaintiff was
11 unable to maintain good concentration, persistence, or pace.
12 (A.R. 147.) Her intellectual level was within the borderline
13 range with evidence of marked cognitive impairment; memory was
14 impaired for immediate and recent events and intact for remote
15 events; and concentration and problem-solving skills were
16 impaired.

17      The diagnosis was mood disorder, not otherwise specified,
18 rule out bipolar disorder; cognitive disorder, not otherwise
19 specified, unknown etiology, but most likely associated with
20 central nervous system damage as a result of head trauma;
21 attention deficit disorder, inattentive type, borderline
22 intellectual functioning, and seizure disorder to be ruled out,
23 with a global assessment of functioning of forty-five. Prognosis
24 was guarded for the mood disorder, undetermined for the cognitive
25 disorder and attention deficit disorder, and poor for the
26 borderline intelligence. It was not likely that she would improve
27 during the next twelve months. Plaintiff was instructed on local
28 mental health follow-up. She was unable to manage funds, would

have difficulty performing simple, repetitive tasks because of
the cognitive disorder and would have difficulty performing more
complex tasks; she would have difficulty accepting supervision,
interacting acceptably with coworkers and the general public, and
maintaining regular attendance and completing a normal workday
without interruption from a psychiatric disorder. (A.R. 148-49.)

In August 2002, state agency medical consultant Evangeline
Murillo opined that Plaintiff's affective disorder, not otherwise
specified, resulted in mild limitations in activities of daily
living, maintaining social functioning, concentration,
persistence, or pace, with no evidence of episodes of
decompensation. Plaintiff was capable of simple, repetitive
tasks; she was moderately limited in the ability to understand,
remember, and carry out detailed instructions; she retained the
ability to sustain simple instructions in two-hour increments and
to interact, socialize and adapt, and respond to work changes.
(A.R. 150-163, 176-77, 181-83.) State agency medical consultant
Archimedes Garcia, a psychiatrist, affirmed Dr. Murillo's
assessment on January 16, 2003. (A.R. 183-85.)

From November 2002 through March 2003, Plaintiff visited
Family HealthCare for refills of medication for depression. She
reported in March 2003 that she had fought with her mother and
had been incarcerated and thus had not taken her Zoloft. (A.R.
187-193.) In July 2003, Plaintiff visited Porterville Health
Clinic to establish a treatment relationship, reported five years
of taking Zoloft, was told she would be referred to the mental
health clinic, and was instructed to follow-up in four weeks.
(A.R. 209.)

14

In September 2003, Lance A. Portnoff, Ph.D., a diplomate of
the American Board of Professional Neuropsychology and a fellow
the American College of Professional Neuropsychology, performed a
consulting, psychological evaluation of Plaintiff. The tests
administered included a history, a mental status exam, a review
of background information, Wechsler Adult Intelligence Scale III
(WAIS III), Wechsler Memory Scale-Revised, and REY 15 Item Test.
(A.R. 195-99, 195.) Plaintiff recited a history of a couple of
minor concussions that was otherwise unremarkable. She reported
that she drove and was able to manage a checking account
independently, and she denied any problems with daily activities.
Plaintiff's speech was normal and spontaneous; receptive language
comprehension was grossly intact; thought process was generally
coherent and organized with mild concreteness and
distractability; and her affect was mildly nervous. The Rey 15
Item Test was administered to assess test-taking motivation. Her
performance was atypical because she could reproduce only five
items, which was worse than the average psychiatric and
neurologic patient; when Dr. Portnoff re-administered some of Dr.
House's items, Plaintiff then thought that there were thirteen
eggs in a dozen, whereas she recalled that twelve were in a dozen
with Dr. House. Dr. Portnoff stated that there was no reason why
she should have forgotten that bit of information in the interim,
and he concluded that although she was basically alert and
cooperative for all test procedures, she did not appear to be
making her best effort, so the findings were not considered to be
a valid representation of her actual cognitive status.

Dr. Portnoff also reported test findings on the WAIS-III of

a full scale IQ of 52, which was mild to moderately deficient intellectual functioning but which was inconsistent with the ability to drive a car or use a checking account. There were many improbabilities with her performance, including a man missing a nose on picture completion, an item spotted by most mentally retarded and demented persons, as well as an inability to do most of the simplest designs or even the first picture arrangement item. Her performance on the Wechsler Memory Scale was also improbable; although she could hold a normal conversation with the examiner without his having to repeat himself, she claimed to be unable to recall more than three single-digit numbers at a time.

Dr. Portnoff opined that Plaintiff had not been a consistent historian with the two psychologists with respect to education; her history was vague without specification of what depressed her. He opined that the results of the current exam were invalid because of poor test-taking motivation. Thus, whether or not she actually had any learning disorder, or to what extent, or whether or not she actually had any significant depression despite medication, could not be determined. Dr. Portnoff's diagnosis was thus deferred. (A.R. 198-99.)

The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The uncontradicted opinion of an examining physician may be rejected only if the Commissioner provides clear and convincing reasons for rejecting it. Id.; Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001). An ALJ may reject the opinion of an examining physician

and adopt the contradictory opinion of a nonexamining physician

only for specific and legitimate reasons that are supported by

substantial evidence in the record. Moore v. Commissioner of

Social Security Administration, 278 F.3d 920, 925 (9th Cir. 2002)

(quoting Lester v. Chater, 81 F.3d at 830-31). Reliance on the

opinion of a consulting, examining physician is appropriate, and

the opinion of such an expert is substantial evidence where it is

based on the expert's own examination and clinical findings.

Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

Here, the ALJ gave many specific, legitimate reasons for

rejecting Dr. House's opinion. Inconsistency with the medical

record, the paucity of observed objective signs or symptoms,

minimal follow-up treatment, and an absence of evaluation of

treatment can be specific and legitimate reasons for rejecting a

medical source's opinion. A conclusional opinion that is

unsubstantiated by relevant medical documentation may be

rejected. See Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir.

1995). The fact that an opinion is based primarily on the

patient's subjective complaints may be properly considered.

Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th

Cir. 1992). It is appropriate for an ALJ to rely on an absence of

a longitudinal history in discounting an expert's opinion. Cansio

v. Shalala, 833 F.Supp. 764, 768 (C.D.CA 1993). It is appropriate

for an ALJ to consider the absence of supporting findings, and

the inconsistency of conclusions with the physician's own

findings, in rejecting a physician's opinion. Johnson v. Shalala,

60 F.3d 1428, 1432-33 (9th Cir. 1995); Matney v. Sullivan, 981

F.2d 1016, 1019 (9th Cir. 1992); Magallanes v. Bowen, 881 F.2d

17

1  747, 751 (9th Cir. 1989).

2      Here, Plaintiff was prescribed Zoloft; Plaintiff failed to
3  obtain follow-up care, and thus her treatment consisted of taking
4  medication. Dr. House assessed Plaintiff with only a mini-mental
5  status exam involving a few basic tasks. (A.R. 145-46.) Lack of
6  objective support was a strong basis for rejecting Dr. House's
7  opinion. 20 C.F.R. § 416.927(d)(3), (4). Dr. Portnoff, on the
8  other hand, administered many tests and resorted to multiple
9  instruments to assess Plaintiff's mental impairment.

10     The ALJ also relied on the inconsistent findings of Dr.
11 Portnoff, who administered many tests and reported on many
12 inconsistent test results; and on Plaintiff's inconsistent
13 reports to Dr. Portnoff of her capacities with respect to
14 activities of daily living and managing her checking account.
15 (A.R. 18-19.) He expressly stated:

16         Consultative psychologist [Lance A. Portnoff, Ph.D.,
           R.T. 195-99] reported on the many inconsistencies in
17         the claimant's testing results in Exhibit B-10F.
           He noted that the claimant was able to independently
18         manage her checking account and denied any problems
           with activities of daily living. He noted that she
19         did not appear to be making her best effort on testing
           and he considered the findings to not be a valid
20         representation of her actual cognitive status.

21 (A.R. 19.) The ALJ had expressly rejected Plaintiff's credibility
22 as inconsistent with any RFC limitations imposed by any treating
23 physician. (A.R. 19.) It thus is concluded that the ALJ stated
24 specific, legitimate reasons for crediting the opinion of one
25 examining expert over another.

26     IV. <u>Disposition</u>

27     Based on the foregoing, the Court concludes that the ALJ's
28 decision was supported by substantial evidence in the record as a

1  whole and was based on the application of correct legal
2  standards.

3      Accordingly, the Court AFFIRMS the administrative decision
4  of the Defendant Commissioner of Social Security and DENIES
5  Plaintiff's Social Security complaint.

6      The Clerk of the Court IS DIRECTED to enter judgment for
7  Defendant Michael J. Astrue, Commissioner of Social Security,
8  and against Plaintiff Catherine L. Harris.

9  IT IS SO ORDERED.

10 **Dated:  __October 10, 2008__**            _____/s/ Sandra M. Snyder_____
                                    UNITED STATES MAGISTRATE JUDGE